UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES R. STEPHENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: IP02-1212-C-T/F |
| | ) |
| DEPUTY SHERIFF SHILLING, *et al.* | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff James R. Stephens has sued the Marion County Sheriff and numerous Sheriff's deputies because of the sleeping arrangements they provided during his eight-day stay at the Marion County Jail. Because the conditions during Stephens's stay do not rise to the level necessary to establish a violation of the Eighth Amendment, the Court should grant summary judgment against Stephens's claims. Even if Stephens can demonstrate a violation of his Eighth Amendment rights, the individual defendants in this case are shielded by qualified immunity and the Sheriff cannot be liable because Stephens's injuries were not the result of a custom, policy or practice of the Sheriff. As such, the Court should grant summary judgment against Stephens's claims in their entirety.

**I.     Statement of Undisputed Material Facts**

Under the standard for reviewing a motion for summary judgment, the Court should grant summary judgment if "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "[t]he record and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Schmitt v. United States*, 203 F.R.D. 387, 396 (S.D. Ind. 2001). If the

1

moving part meets its burden to show the absence of facts to support a claim, "the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must present specific facts to show that there is a genuine issue of material fact." *Id.* (quoting Fed. R. Civ. P. 56(e)).

Stephens is serving a prison sentence in the Indiana correctional system. (Complaint at 1, 3.) For eight days in early May of 2002, Stephens was housed at the Marion County Jail so that he could participate in a post-conviction hearing in the Marion County criminal courts. (*Id.* at 3.) He alleges that he did not have a mattress during three nights of his stay and that he slept on a steel bunk frame on those days. (*Id.* at 3, 4.) During the remaining five days of his stay in the jail, he slept on a mattress that was not elevated off of the floor. (*Id.*)

He claims that the bedding he received during his stay at the jail caused lower pack pain, exhaustion, headaches from lack of sleep, emotional pain, and depression. (Certificate at 5-6.) He claims he now occasionally has dull pain in his right side and wakes up due to pain. (*Id.* at 6.)

## II. Stephens Cannot State A Claim Against The Defendants Because The Bedding He Received While Detained At The Marion County Jail Does Not Rise To The Level Of An Eighth Amendment Violation.

Based on these facts, Stephens asserts that the conditions of his confinement violated his right to due process under the Fifth and Fourteenth Amendments. However, the Supreme Court has explicitly held that the due process clauses do not provide rights greater than the prohibition against cruel and unusual punishment provided by the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 326-27 (1986). As such, Stephens's claims are more properly treated as arising entirely under the Eighth Amendment.

Inmates can state an Eighth Amendment claim based on the conditions of their confinement only in "extreme" circumstances. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir.

2

2001). The Supreme Court has made clear that "[p]rison conditions violate the Constitution only where they 'deprive inmates of the minimal civilized measure of life's necessities.'" *Sanders v. Kingston*, 53 Fed. Appx. 781, 783 (7th Cir. 2002) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

As such, the federal courts have held that Eighth Amendment claims must satisfy a two-part test. First, the inmate must establish that "there was an objectively serious danger that posed a substantial risk of serious harm to his health or safety." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir.2000). Under this standard, "the Eighth Amendment requires prison officials to maintain 'humane conditions of confinement,' which must not exceed 'contemporary bounds of decency.'" *Smith v. Roper*, 12 Fed. Appx. 393, 397 (7th Cir. 2001) (quoting *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir.1994)). If the inmate can satisfy the high hurdle set by this first prong, the inmate must go on to show that the prison officials exercised deliberate indifference to the condition. *Id.*

In analyzing the first prong of the test, the Seventh Circuit has repeatedly emphasized that prison conditions "must be 'extreme' to be actionable" under the Eighth Amendment. *Cunningham v. Eyman*, 17 Fed. Appx. 449, 453 (7th Cir. 2001). That is to say, the Eighth Amendment does not "require that prisoners be comfortable" and conditions of confinement are not actionable so long as they "do not fall below contemporary standards of decency." *Id.* at 454.

In determining whether conditions of an inmate's confinement exceed these standards, courts consider "the totality of the conditions of confinement." *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). In considering the totality of a prisoner's confinement, the Seventh Circuit has emphasized the duration in which condition persisted and has held that temporary conditions will not rise to the level of an Eighth Amendment violation. *See Steward v. Wright*, 101 F.3d

3

704, 1996 WL 665978, *2 (7th Cir. 1996) (table) ("[I]t is well settled that conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment."); *see generally Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.").[1]

Stephens's claims against the Defendants do not satisfy the first prong of the Eight Amendment test and he cannot show that the conditions of his confinement were so extreme and so inhumane that they exceeded contemporary bounds of decency. Stephens's claim regarding the temporary denial of a mattress or an elevated bed does not rise to the level of "extreme deprivation" that is necessary to support his Eighth Amendment claim. *Delaney*, 256 F.3d at 683. Stephens's complaint admits that he was given a place to sleep each night he was in jail. The first three nights, he was given a steel bunk on which to sleep. After he complained to the jail staff, he received a mattress that was not elevated off of the floor. He slept on this mattress for the remaining five days that he was in jail. He was not required to sleep on the floor or deprived of the opportunity to sleep. Instead, the jail provided him a bunk and subsequently a mattress on which to sleep. The jail was not required to make Stephens comfortable. *Cunningham*, 17 Fed. Appx. at 453. Moreover, the jail responded to his request for a mattress and he had that mattress for the majority of his stay. To the extent Stephens objected to these conditions, his stay at the jail lasted only brief period of time. Under these facts, the conditions of Stephens's confinement were not so inhumane as to violate Stephens's Eighth Amendment rights.

---

[1] For instance, the Seventh Circuit has affirmed the dismissal of an Eighth Amendment claim where guards left an inmate shackled in soiled clothing for four to five hours: "Though certainly unpleasant, these hardships were temporary and as this court's case law makes clear, they were not of sufficient severity to implicate the Eighth Amendment." *Cunningham*, 17 Fed. Appx. at 453.

In fact, numerous courts in the Seventh Circuit and in other jurisdictions have analyzed similar facts and declined to apply the Eighth Amendment's ban on cruel and unusual punishments. Stephens's claim breaks into two components: (1) he slept on a steel bunk frame for three days and (2) he slept on a mattress that was not elevated for five days. The Seventh Circuit has rejected claims that were virtually identical to each of these components.

First, in *Pelker*, the Seventh Circuit rejected a claim that an inmate's Eighth Amendment rights were violated when he was denied "dry bedding and clothing forcing him to sleep on a 'slab of metal' for two and one-half days and giving him a severe cold." 891 F.2d at 138. The Seventh Circuit explicitly rejected his claim that sleeping on the slab of metal violated society's standards of decency:

> In reviewing this claim, we consider the totality of the conditions of confinement to determine whether a prisoner has been deprived of basic human needs. Johnson's situation, while disquieting, was a temporary inconvenience and was not compounded by a deprivation of other necessities, unlike the cases he cites in support of his claim.

*Id.* at 138-39 (citations omitted).

Second, in *Sanders*, the Seventh Circuit rejected the plaintiff's Eighth Amendment claim based, *inter alia*, on the fact that the prison officials "doubl[ed] him in a single cell without giving him a bunk for his mattress." 53 Fed. Appx. at 783. The court concluded that being required to sleep on a mattress on the floor "falls far short of the 'extreme deprivation' required to satisfy the objective component of an Eighth Amendment conditions-of-confinement claim. *Id.* (quoting *Delaney,* 256 F.3d at 683). As another court has put it, "[n]othing in the Constitution 'requires elevated beds for prisoners.'" *Powell v. Cook County Jail,* 814 F.Supp. 757, 759 (N.D. Ill. 1993) (quoting *Bowden v. Fairman*, 1992 WL 366905 (N.D. Ill. 1992)).

5

Other courts have reached similar conditions when inmates challenged the conditions of their sleeping arrangements during their incarceration. For instance, the court in *Ware v. Fariman* held that an inmate could not state an Eighth Amendment claim based on the fact that he was forced to sleep on a cold floor for a week. 884 F. Supp. 1201, 1207 (N.D. Ill. 1995). Relying on *Pelker*, the court held that "[t]he conditions complained of by plaintiff, although perhaps uncomfortable, are at most temporary and therefore not serious enough to be considered cruel or unusual punishment." *Id.*[2] Other cases have reached similar conclusions. *See Jones v. Toombs*, 77 F.3d 482, 1996 WL 67750, *1 (6th Cir. 1996) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two week period."). *Wells v. Jefferson County Sheriff Dep't*, 159 F.Supp.2d 1002, 1011 (S.D. Ohio 2001) (holding that "having to sleep on a mattress on the floor or being exposed to cold temperatures simply do not rise to the level of a constitutional violation."); *Schroeder v. Kaplan*, 60 F.3d 834, 1995 WL 398878, *2 (9th Cir. 1994) (rejecting inmate's claim based on the allegation "that 'during most of March 1991,' he slept on the 'cold' concrete floor of his cell 'in an air-conditioned climate around the low 50 degree range.'").

The facts in these cases mirror the temporary bedding Stephens received in this case. The temporary deprivation of a mattress and the subsequent denial of an elevated bed simply do not rise to the level of "extreme deprivation" that is necessary to satisfy the first prong of the Eighth Amendment test. *Delaney*, 256 F.3d at 683.

---

[2] The court also held that "[s]leeping conditions allegedly imposed as a result of overcrowding rather than 'punishment' do not violate the Eighth Amendment." *Ware*, 884 F.Supp. at 1207.

### III.     The Individual Defendants Are Shielded By Qualified Immunity.

Stephens's claims against the individual defendants are also barred by qualified immunity. The defense of qualified immunity "is designed to protect government agents 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To further this policy, a governmental employee is shielded from suit under Section 1983 if the employee's conduct satisfies two-step test. *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004). First, the Court must determine whether any of the individual defendants actually violated any of Stephens's constitutionally protect rights. *Id.* If so, the Court must then "inquire whether the right was clearly established in light of the specific context of the case." *Id.*

Even if the Court finds that the conditions of Stephens's confinement violated the Eighth Amendment, the right Stephens seeks to enforce was not so clear that Stephens can defeat a claim of qualified immunity. There is no established federal caselaw showing that an inmate has a constitutionally protected right not to sleep on a steel bunk for three days and to have an elevated mattress for five days. In fact, the Seventh Circuit cases on point rejected Eighth Amendment claims based on the condition of an inmate's bedding that were virtually identical to the circumstances of this case. First, in *Pelker*, the court rejected a claim based on an inmate's contention that he was forced to sleep "on a 'slab of metal' for two and one-half days." 891 F.2d at 138. Stephens's claim that he slept on a steel bunk frame for three days mirrors the circumstances in *Pelker*. The only difference is that Stephens was assigned to the steel bunk for an additional 12 hours. This distinction is insufficient to give Stephens the type of clearly enforceable right that can survive the qualified immunity defense.

7

Second, the Seventh Circuit has flatly rejected claims that inmates have a constitutionally protected right to mattresses that are elevated above the floor. In *Sanders*, the court acknowledged that "[w]e know of no case holding that the Eighth Amendment requires elevated beds for prisoners, and Sanders does not cite one." *Sanders*, 53 Fed.Appx. at 783. Instead, the court cited two cases from other circuits that rejected this proposition. *Id.* (citing *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) and *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)). *Sanders* is on all fours with Stephens's claims regarding the fact that he slept on an unelevated mattress for five days. The only inference that a reasonable officer could draw from this caselaw is that Stephens's bedding conditions did not violate his Eighth Amendment rights.

Beyond the similarity of Stephens's claims to existing Seventh Circuit caselaw, the deprivations he alleges fall far short of those that the federal courts have addressed in other Eight Amendment cases. *See, e.g., Ware*, 884 F.Supp. at 1207; *Powell*, 814 F. Supp. at 759. Under this caselaw, sleeping on a steel bunk for three days and a mattress for five days does not establish the type of inhumane conditions necessary for a clear violation of the Eighth Amendment.[3]

## IV.    The Sheriff Did Not Have A Custom, Policy, or Practice Regarding The Beds Provided To Inmates.

Stephens also asserts an Eighth Amendment claim against the Sheriff in his official capacity. A plaintiff cannot assert a Section 1983 claim for damages against an official acting in

---

[3] Stephens has also sued David Pankoke because Stephens alleges he was the jail commander in early May 2002. As has been disclosed in discovery, Pankoke was not the jail commander at that time Stephens was housed at the jail. (2002 Jail Report at 2.) As such, Pankoke has no personal involvement in this matter and Stephens's claims against him should be dismissed. *See Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996) (holding that "[a] prison official cannot 'incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right.'").

8

his official capacity unless the official actually participated in the unconstitutional conduct. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). In most instances, plaintiffs attempt to satisfy this requirement by showing that the conduct at issue was the result of a custom, policy or practice of the governmental entity. *See id.*

Stephens's claims against the Sheriff are based on this doctrine and he alleges that he was deprived of the desired bedding because of a custom, practice or procedure of the Sheriff. His claims in this regard are based exclusively on an order issued by Judge Barker in the ongoing litigation regarding conditions at the jail. (Stephens's Motion at 1-2.) The order holds the Sheriff in contempt for failing to meet certain guidelines regarding overcrowding and the number of beds at the jail.

However, nothing in Judge Barker's order purports to address the issue of whether the Sheriff has a custom, policy or practice regarding bedding for inmates like Stephens. The case in which the order arose seeks only injunctive relief. It is an open question in the Seventh Circuit as to whether *Monell*'s requirements apply to claims for injunctive or other prospective relief. *See Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464 (7th Cir. 2001). The order does not address this issue, but simply finds that the Sheriff had not met the requirements of the court's previous orders. The fact that the court found a constitutional violation does not mean *a fortiori* that the court also found that the violation was a result of a custom policy or practice. This subtlety is lost in Stephens's allegations, but renders meaningless his arguments as to the preclusive effect of the order.

In fact, the order shows that the Sheriff has made good faith efforts to eliminate overcrowding at the jail and that the violations of the court's previous orders were not willful. (Order at 2-4.) The order emphasized that "significant progress has been achieved on all fronts

9

and by all involved in dealing with the jail conditions problem." (*Id.* at 3.) As such, the order imposed remedial as opposed to punitive sanctions. (*Id.* at 4.) These facts show that the Sheriff was attempting to remedy the conditions in the jail and, as Judge Barker acknowledged, the continuing constitutional violation was not willful on the part of the Sheriff. These statements in the order do not show, as Stephens claims, that the Sheriff had a policy in violation of the constitution, but in fact establish that the Sheriff's policy was to fix the problems of which Stephens complains. Because Stephens cannot show that any constitutional violation was the result of a custom, practice or policy, the Court should also grant summary judgment on his claims against the Sheriff.

## V. Conclusion

Stephens cannot show that the sleeping arrangements during his eight-night stay in the Marion County Jail were so extreme and inhumane that they violated the Eighth Amendment. Even if he could, his claims are barred by qualified immunity and he cannot establish a claim against the Sheriff in his official capacity. For all of these reasons, the Court should grant the Defendants' motion for summary judgment against all of Stephens's claims.

Respectfully submitted,

OFFICE OF CORPORATION COUNSEL

Mark J. Crandley, # 22321-53
Assistant Corporation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, IN 46204
Telephone: (317) 327-4055
Attorney for Defendants

10

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been duly served upon the parties listed below by United States Mail, postage prepaid on this 25th day of June, 2004:

James R. Stephens
#996056
PO Box 30
Pendleton, IN 46064

                                          Mark J. Crandley
                                          Assistant Corporation Counsel